**Orville J. CAMP, Jr., Plaintiff–Appellant,**

v.

**UNITED STATES BUREAU OF LAND MANAGEMENT; Indian Hill Limited Partnership; The Nature Conservancy, Defendants–Appellees.**

**No. 98–35465.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1999.

Decided July 20, 1999.

**1142**

Daniel J. Stotter, Bahr & Stotter Law Offices, Eugene, Oregon, for the plaintiff-appellant.

Ellen D. Katz, United States Department of Justice, Washington, D.C., for defendant-appellee United States Bureau of Land Management.

Christopher L. Cauble, Walter L. Cauble, Shultz, Salisbury, Cauble & Dole, Grants Pass, Oregon, for defendant-appellee Indian Hill Limited Partnership.

Gregory J. Miner, Bogle & Gates, Portland, Oregon, for defendant-appellee The Nature Conservancy.

Before: CANBY and T.G. NELSON, Circuit Judges, and FOGEL,[1] District Judge.

FOGEL, District Judge:

The district court found that appellant's challenges to a transfer of land made by the United States Bureau of Land Management (BLM) were time-barred because the statute of limitations began to run when BLM published notice of the proposed land transfer in the Federal Register.[2] We conclude that publication of notice in the Federal Register was insufficient to trigger the statute of limitations because BLM had a duty to give appellant's predecessor in interest personal notice of the proposed transfer. In an unpublished memorandum filed herewith, however, we conclude that appellant's claims nevertheless are time-barred because his predecessor in interest had actual notice of the transfer outside the limitations period.[3] We therefore will affirm the judgment.

## I.

Appellant Orville J. Camp, Jr. owns rural real property with no water source of its own. Since 1858, Camp's predecessors in interest have drawn water from Tuttle Springs, located on adjacent property. Tuttle Springs is named for Camp's grandmother. Camp's water right in Tuttle Springs is memorialized by an Oregon Certificate of Water Right. Camp claims an implied easement to access the water right; the scope and existence of any implied easement presently are the subject of litigation in an Oregon state court proceeding between Camp and the current owner of the adjacent property.

As of 1977, the adjacent land was owned by the United States. At that time BLM granted a twenty year right of way to Camp's immediate predecessor in interest, his uncle, Lowell Camp. Under the terms of the right of way Lowell Camp was permitted to maintain a water pipeline to the spring.

In December 1987, BLM conveyed the adjacent property to defendant The Nature Conservancy ("TNC") by issuing a land patent. TNC in turn conveyed the

---

1. The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

2. *Camp v. United States Bureau of Land Management*, 17 F.Supp.2d 1167 (D.Or.1998).

3. The unpublished memorandum also disposes of appellant's other contentions on appeal.

property to defendant Indian Hill Limited Partnership ("Indian Hill"), the present owner.[4] The ownership transfers were part of a land exchange whereby BLM received environmentally-sensitive land in exchange for the land conveyed. Defendant TNC acted as a go-between to facilitate the exchange.

BLM first gave public notice of the proposed conveyance on July 7, 1987, by publication in the Federal Register. *See* 52 Fed.Reg. 25,476. BLM also published notices regarding the conveyance in two local newspapers. BLM admits, however, that there is no evidence that Lowell Camp was notified personally of the proposed conveyance, despite the fact that a then-applicable regulation required such notice to adjoining landholders. *See* 43 C.F.R. § 2201.1(e), as in effect in 1987. ("The notice of realty action shall be sent to ... adjoining landowners....").

TNC and Indian Hill each took the property subject to Lowell Camp's right of way. When that right of way expired by its terms in 1997, however, Indian Hill refused to renew it on the same terms. Camp contends that had the adjacent land remained in BLM's hands, the right of way almost certainly would have been renewed. *See* 43 C.F.R. 2803.6–5(a) (the agency "shall renew the grant so long as the project or facility is still being used for the purposes authorized in the original grant and is being operated and maintained in accordance with all the provisions of the grant and pursuant to the regulations of this title.").[5] Camp also contends that if he or his uncle had received noticed of the proposed conveyance they could and would have taken a variety of steps to protect their interests.

Camp brought this action under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* ("APA") and the Quiet Title Act, 28 U.S.C. § 2409a, alleging that BLM failed to give Lowell Camp proper notice of the planned conveyance of the adjacent property, thereby denying him due process. The district court ruled that Camp's APA and due process claims against BLM are barred by the applicable six-year statute of limitations and that there was no jurisdiction under the Quiet Title Act because BLM disclaimed any interest in the property. The district court further held that because BLM is an indispensable party, Camp's claims against the other defendants necessarily fail. Finally, the district court declined to exercise supplemental jurisdiction over Camp's remaining state law claim, brought under Oregon's quiet title statute.

## II.

■ The district court's grant of summary judgment is reviewed de novo. *See San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159 F.3d 470, 477 (9th Cir.1998).

## III.

**Publication of Notice in the Federal Register Is Insufficient to Start the Statute of Limitations Running as to Persons Entitled by Law to Receive Personal Notice.**

44 U.S.C. § 1507 provides, in relevant part,

A document ... published in the Federal Register is not valid as against a person who has not had actual knowledge of it until the duplicate originals or certified copies of the document have been filed with the Office of the Federal Register and a copy made available for public inspection.... [F]iling of a docu-

---

4. The record is unclear as to the precise timing of the transfer and as to entity names. Camp filed an affidavit indicating the property actually was transferred to "Indian Hill Timber Company," a "predecessor in interest" to Indian Hill. Camp's declaration gives a date for that transfer which *predates* the land patent. This apparent inconsistency is irrelevant because there is no dispute that the land went from BLM to Indian Hill through TNC.

5. At oral argument, BLM suggested that the right of way would *not* have been renewed because it had not been used properly. This argument goes beyond the record.

ment ... *except in cases where notice by publication is insufficient in law,* is sufficient to give notice of the contents of the document to a person subject to or affected by it.

(emphasis added).

█ Here, Camp raises no claim that the notice in issue was not duly filed or made available for public inspection. Rather, Camp argues that notice by publication was "insufficient in law" because BLM was required by regulation to give personal notice to Lowell Camp.

We have found little authority applying or even considering this statutory exception to the rule that publication in the Federal Register serves as notice to all affected parties. In *Covelo Indian Community v. Federal Energy Regulatory Comm'n,* 895 F.2d 581 (9th Cir.1990), we rejected an argument that the Federal Energy Regulatory Commission deprived certain Native Americans of due process by failing to give them actual notice of license renewal proceedings regarding a hydroelectric project. *Id.* at 587–88. We alluded to the exception for cases "where notice by publication is insufficient in law," but concluded that the Native Americans' interest in the licensing proceedings was insufficient to give rise to a due process right to receive actual notice. *Id.* at 582.[6]

In *Loudner v. United States,* 108 F.3d 896 (8th Cir.1997), the Eighth Circuit concluded that as a trustee for certain Native American funds it held, the United States could not rely on publication in the Federal Register alone to start the statute of limitations running on the time for beneficiaries to make claims to the funds. *See* 108 F.3d at 902 n. 5. Although the court

cited section 1507, it did not rely expressly on the exception therein.

In *Alaska v. Alaska Land Title Ass'n,* 667 P.2d 714 (Alaska 1983), the *dissent* argued that the "insufficient in law" exception should have been applied to relieve certain landowners from being charged with constructive notice of unrecorded easements such that the landowners could not claim to be bona fide purchasers under Alaska's recording act. *See* 667 P.2d at 731. The easements in issue were not set forth in the land patents given to the landowners' predecessors in interest by the federal government, but had been described in prior Federal Register notices regarding planned roadways. *See id.* The dissent contended that since Alaska law does not charge landowners with notice of pre-patent transactions or of instruments not recorded in the chain of title, the Federal Register notices were "insufficient in law" to put the landowners on constructive notice. *See id.* The majority opinion did not discuss the issue.

Finally, in *Bennett v. Director, Office of Workers' Comp. Prog., U.S. Dept. of Labor,* 717 F.2d 1167 (7th Cir., 1983) the petitioner raised a claim that he was entitled by regulation to notice of certain administrative appeal rights and deadlines. *See* 717 F.2d at 1169. The petitioner, however, conceded at oral argument the regulation did *not* call for such notice. *See id.* The court then applied the general rule of section 1507 without discussion of the exception. *See id.* Arguably the fact that the court discussed petitioner's abandoned claim implies that it would not have applied the general rule if petitioner had a valid argument that personal notice was required by regulation.

---

**6.** In so holding, we distinguished *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny on grounds that those cases involved "imminent government action directly affecting parties' property rights." *Covelo Indian Community,* 895 F.2d at 587. Here, Camp also relies on *Mullane* and its progeny to argue that BLM was also legally obligated to give Lowell Camp personal notice as a

matter of due process. BLM responds that because its conveyance of the property was subject to the existing right of way, the conveyance destroyed no property interest belonging to Lowell Camp and due process analysis is irrelevant. Because BLM was required by regulation to give personal notice, we need not decide whether due process also required such notice.

The lack of clear precedent does not mean, however, that the statute or its application to the facts here is unclear. By the plain language of the statute, publication in the Federal Register does not serve as notice where notice by publication is "insufficient in law." Here, there is no dispute that BLM had a legal duty to ensure that notice of the proposed transaction was "sent" to Lowell Camp, an "adjoining landowner." *See* 43 C.F.R. § 2201.1(e), as in effect in 1987. Accordingly, as to Lowell Camp, notice by publication was insufficient in law. Publication in the Federal Register thus did not start the statute of limitations running on Camp's claims.

In reaching a contrary conclusion, the district court relied on a statement in *Friends of Sierra Railroad, Inc. v. Interstate Commerce Commission,* 881 F.2d 663 (9th Cir.1989), that "[p]ublication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." 881 F.2d at 667–68. That statement accurately reflects the main statutory rule embodied in section 1507, but it does not reach the express statutory exception for circumstances where publication is "insufficient in law." *See,* 44 U.S.C. § 1507. In *Friends,* and in all of the cases on which it relied, there was no suggestion that the agencies involved had any independent legal duty to give notice by a means other than publication. Accordingly, the statutory exception was not before us in *Friends* and we did not need to discuss it.

BLM relies on *Shiny Rock Mining Corp. v. United States,* 906 F.2d 1362 (9th Cir.1990), in which we held that a mining company's challenges to certain BLM actions were time-barred because BLM had given notice of the action in the Federal Register more than six years prior to the suit. Again, however, in *Shiny Rock* there was nothing to suggest that BLM had any independent duty to give the mining company notice other than by publication.

Accordingly, while it undoubtedly is the law that publication in the Federal Register generally serves as notice to all interested parties, it does not serve as notice to persons who are legally entitled to personal notice.

## IV.

Although we have differed with the district court as to when the statute of limitations began to run, we nevertheless have concluded that the limitations period expired before this action was filed for reasons explained in our unpublished memorandum disposition filed herewith. As we also reject Camp's other challenges on appeal for reasons discussed in the memorandum, the judgment of the district court is

AFFIRMED.