Chief Judge KOZINSKI,
concurring:
The relevant facts, put in the light most favorable to the plaintiffs, are much simpler than you’d think after reading the majority’s opinion: Boise wanted to address the problem of homelessness, so it helped establish Community House. It eventually took over, closed the shelter and evicted everyone, including tenants living in longer-term housing. It then leased the building for a dollar a year to a Christian organization called Boise Rescue Mission, with an option to purchase at a below-market price. The building, which the Rescue Mission eventually bought, had to include a shelter for at least 66 homeless men but could also be used for other residential purposes. The Boise City Council and mayor approved the deal. Two other city officials helped implement the plan. The Rescue Mission resumed at least one long-term housing program and permitted *974 only men to stay overnight. It also indoctrinated guests with religious activities.
On those facts, I agree that the individual councilmen and mayor are entitled to legislative immunity. But I disagree with the way the majority comes to that conclusion. It holds that we have to look at whether the particular lease and sale fit into a broader plan to address homelessness. See maj. at 961 (examining the “larger developing universe” to determine whether particular “disputed acts” were “essentially legislative or not”). That approach is foreclosed by Kaahumanu v. County of Maui, 315 F.3d 1215 (9th Cir.2003). In that case, we decided that county councilmen could be sued for their vote to deny a conditional use permit — an ad hoc decision (a “disputed act[ ]”) we distinguished from the county’s broader zoning policy (the “larger developing universe”). Id. at 1218-20, 1224. The distinction is important because almost any discrete, narrow decision — like denying a permit— could otherwise be recast as part of some bigger legislative plan and shielded by legislative immunity. Legislative immunity turns on whether a particular disputed act, rather than some nebulous “universe” of related policies, is essentially legislative. We’re bound by our precedent.
Legislative immunity does apply to some very narrow actions, including core budgeting decisions that affect the public at large. See, e.g., San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 473, 476 (9th Cir.1998) (single loan of public money); see also Bogan v. Scott-Harris, 523 U.S. 44, 47, 55-56, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (city budgeting). Legislators should not have to answer for every decision to appropriate public resources to one project instead of another. See San Pedro Hotel, 159 F.3d at 476 (“This is precisely the type of decision for which a legislator must be given immunity. To hold otherwise would expose virtually every municipal funding decision to judicial review.”). Yet that’s essentially what the plaintiffs allege the mayor and city council did here: wrongly approve legislation subsidizing the lease and sale of a public building to the Rescue Mission rather than sell it to Community House. The majority therefore reaches the right result on legislative immunity, but not for the right reasons.
I also disagree with the majority’s qualified immunity analysis, even assuming that the plaintiffs sued Birdsall and Chatterton — the remaining individual defendants — in their individual capacities. See Eng v. Cooley, 552 F.3d 1062, 1064 n. 1 (9th Cir.2009). Addressing the Establishment Clause claims, the majority acknowledges that it’s probably unconstitutional to sell a public building at a below-market price offered only to an organization using it for religious indoctrination. Maj. at 970, 972. But the majority also suggests that such a sale might not be unconstitutional if it would save the city some money and require the religious group to “execute!] an important city policy.” Id. at 972. The majority can’t cite a single case or reason that justifies carving out that exception. And no wonder: Almost every municipal service costs money, but that doesn’t mean a city can give away its sanitation department to the Muslims, its police department to the Jews or its schools to the Catholics in an exclusive sweetheart deal.
Birdsall and Chatterton are entitled to qualified immunity from the Establishment Clause claims for a very basic reason independent of whether approving the deal here was clearly unconstitutional at the time: They didn’t make the decision to lease and sell Community House to an organization that discriminated on the basis of religion. The complaint accused *975 them only of “implementing the policies of the City of Boise,” and we shouldn’t consider additional allegations that were “newly minted” on appeal. See Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 995-96 (9th Cir.2009); Crawford v. Lungren, 96 F.3d 380, 389 n. 6 (9th Cir.1996). Even if we do, Chatterton simply ran the RFP and auction processes, attended meetings and helped prepare the lease for Council approval. Birdsall apparently played no role in negotiating the lease and sale. Their conduct isn’t what triggered the alleged Establishment Clause problem. See Whitaker v. Garcetti, 486 F.3d 572, 582 (9th Cir.2007) (“[A]n individual defendant is stripped of qualified immunity only if he personally violated a plaintiffs constitutional rights.”).
Birdsall and Chatterton have qualified immunity from the Fair Housing Act claims for similar reasons. They didn’t approve the men-only policy authorized by city council and implemented by the Rescue Mission. See Dittman v. California, 191 F.3d 1020, 1027 (9th Cir.1999) (“[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity.”); Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir.1994). And they could have reasonably believed that the policy was justified by legitimate safety concerns. See Cmty. House, Inc. v. City of Boise, 490 F.3d 1041, 1050-51 (9th Cir.2007). We need not cast doubt, as the majority does, on a published opinion by a previous panel that had “little trouble” concluding that the Act did apply to at least parts of the building as operated by the Rescue Mission before the sale. Id. at 1047-48 & n. 2; see maj. at 969.
Like the majority, I would hold that the individual defendants are entitled to immunity. But I see no reason to depart from our precedent in doing so.