**Edward A. CHAPPELL, Plaintiff–Appellant,**

v.

**Alan ROBBINS, Defendant–Appellee.**

No. 93–17063.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1995.

Decided Jan. 4, 1996.

Eric A. Isaacson, Milberg Weiss Bershad Hynes & Lerach, San Diego, California, for plaintiff-appellant.

Michael L. Lipman, Coughlan, Semmer & Lipman, San Diego, California, for defendant-appellee.

Before: POOLE and KLEINFELD, Circuit Judges, and GONZALEZ, District Judge.*

POOLE, Circuit Judge:

In passing the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.,* Congress created a wide array of novel civil and criminal weapons to use against crime and corruption. We must decide whether in doing so, Congress expressed a clear intent to abrogate legislators' common-law immunity. We hold that it did not.

I

This appeal involves a civil RICO suit by an aggrieved citizen, Edward Chappell, against a former California State Senator, Alan Robbins. Because this is an appeal from a Rule 12(b)(6) dismissal, we take as

---

* The Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation.

true all material allegations in Chappell's complaint. *Everest and Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 229 (9th Cir.1994).

The suit arises from a scheme to allow increases in premium rates and commissions garnered from the sale of credit life and credit disability insurance. In California, prior to 1985, such rates and commissions were subject to regulation by the California Insurance Commissioner.

From 1978 to 1985, Robbins was the Chairman of the Senate Insurance Committee. During that time, he admits that he took bribes from the president of a credit life and disability insurance company in exchange for legislative activity to help the company.

In 1978, after receiving insurance industry bribes, Robbins sponsored bills to strip the Insurance Commissioner of the power to regulate credit insurance and repeal certain new Insurance Commissioner regulations. Although these bills were passed by the legislature, they were vetoed by Governor Jerry Brown. Robbins received additional bribes, and in 1985, he sponsored and voted for another bill ("the Robbins Bill") which again sought to strip the Insurance Commissioner of regulatory authority over credit insurance and repeal certain new regulations. This bill became law. As a result, the insurance industry obtained excess profits from credit insurance buyers like Chappell.

Robbins was charged with criminal RICO and tax evasion violations under 18 U.S.C. § 1962(c) and 26 U.S.C. § 7206(1). He pled guilty and admitted to accepting bribes on numerous occasions, including bribes for his work on the Robbins Bill.

Chappell filed a class action suit against Robbins and other members of the conspiracy. He alleged that Robbins operated his office as a racketeering enterprise, that the defendants conspired to engage in bribery, mail fraud, and wire fraud, and as a proximate result, that Chappell and others were injured by being forced to pay excessive in-surance premiums. Based on these alleged violations of RICO's § 1962, Chappell asserted a right to recover for his injuries under § 1964(c).[1] Chappell also included various supplemental state claims against defendants other than Robbins.

Robbins brought a Rule 12(b)(6) motion to dismiss the lone cause of action against him, the civil RICO claim. The district court granted the motion with prejudice, concluding that Robbins was entitled to absolute legislative immunity. Chappell then filed a Rule 41(a)(1) voluntary dismissal of all remaining claims and defendants. Chappell has timely appealed. We review de novo the district court's Rule 12(b)(6) dismissal. *Id.* at 228.

## II

We must first determine whether legislative immunity even applies to the actions upon which suit is based. Chappell attempts to rest civil RICO liability on Robbins' sponsoring and obtaining passage of legislation in exchange for bribes. We conclude that such actions implicate Robbins' immunity.

■ Legislators have an absolute common-law immunity against civil suit for their legislative acts. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 404–05, 99 S.Ct. 1171, 1178–79, 59 L.Ed.2d 401 (1979); *Trevino v. Gates*, 23 F.3d 1480, 1482 (9th Cir.), *cert. denied sub nom. Wachs v. Trevino*, —— U.S. ——, 115 S.Ct. 327, 130 L.Ed.2d 286 (1994). This immunity extends to those actions falling within "the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). In this circuit, we determine whether a particular action is legislative by considering two primary factors. First, does the act involve ad hoc decisionmaking, or the formulation of policy? *Trevino*, 23 F.3d at 1482; *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985).

---

**1.** 18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

Second, does the act apply to a few individuals, or the public at large? *Trevino*, 23 F.3d at 1482; *Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir.1988). While the question is necessarily one of degree, the more an action involves policymaking and applies to the entire community, the more likely it is to be classified legislative.

■ Robbins' efforts in sponsoring and pushing for passage of legislation concerning statewide insurance regulation fall squarely within the class of legislative acts. They involve policymaking for the community at large and are, if anything, the quintessential legislative acts. *See Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1063 (11th Cir. 1992).

Chappell argues that protecting Robbins from liability for sponsoring legislation in return for bribes does nothing to promote the integrity of the legislative process, and such conduct cannot fairly be called "legitimate legislative activity." He also contends that his allegation about Robbins' motive should allow him to survive a motion to dismiss. Chappell misconstrues the nature of the immunity. The immunity serves a prophylactic function central to the proper functioning of a democratic government, making representatives answerable to the entire electorate rather than a select few. "For our founding fathers ... the growth of democracy and the right of the nation's legislators to be free from civil suit went hand-in-hand. It was well understood that for a democratic government to function democratically, our elected officials, when acting in their legislative capacity, must answer only to their constituents and only on election day." *Id.* at 1063. In order to serve its protective function, the immunity must apply without regard to any allegations of improper motive:

> The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclu-

sion of the pleader, or to the hazard of a judgment against them based on a jury's speculation as to motives....

> ... In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies.

*Tenney*, 341 U.S. at 377–78, 71 S.Ct. at 788–89 (footnote omitted); *see also Cinevision Corp.*, 745 F.2d at 577–580 (9th Cir.1984) (distinguishing qualified executive immunity, which allows liability for voting in bad faith, from absolute legislative immunity). Because legislative immunity hinges on the character of the action taken, not the motives behind it, it applies with full force to Robbins' voting and bill sponsorship.

■ Chappell's attempt to base liability on Robbins' acceptance of bribes raises different problems. "Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act." *United States v. Brewster*, 408 U.S. 501, 526, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972). Legislative immunity does not directly bar a suit based on bribe-taking. However, it does prevent Chappell from proving his case. To make out a civil RICO claim, a plaintiff must be able to show that the RICO violations proximately caused her injury. *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1317, 117 L.Ed.2d 532 (1992). In this case, Robbins' acceptance of bribes caused no injury to Chappell. Only when Robbins acted on those bribes and pushed legislation through could Chappell have suffered any injury. In order to show proximate cause, therefore, Chappell would at a minimum have to demonstrate that the bribes were a factor in the passage of the legislation which injured him. Proof would thus depend on establishing that the legislative acts of writing a bill, voting for it, and persuading others to vote for it, are what harmed plaintiffs. These legislative acts cannot, under *Tenney*, give rise to liability for damages. This is not a problem of proof. Plaintiff could not state a claim upon which relief could be granted because the conduct by which the bribe proximately caused his injury was legislative, and therefore immune.

*See Thillens, Inc. v. Community Currency Exch. Ass'n of Illinois, Inc.*, 729 F.2d 1128, 1131 (7th Cir.), *cert. dismissed sub nom. Thillens, Inc. v. Wall*, 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 342 (1984). Consequently, legislative immunity bars any RICO claim by Chappell based on Robbins' acceptance of bribes.

In reaching this conclusion, we find the reasoning of the Seventh Circuit's decision in *Thillens* persuasive. *Thillens* involved a suit alleging a conspiracy to bribe state legislators to use their influence to drive plaintiffs out of business. Plaintiffs argued that immunity should not bar suit against the legislators because they were suing based on the acceptance of bribes, not legitimate legislative activity. The *Thillens* court rejected this distinction:

> [Plaintiffs'] reasoning is flawed because the defendants' conspiratorial role cannot be so neatly categorized and proved. The defendants took money as payment for their efforts to pass laws influencing the DFI's regulation of the currency exchange industry.
>
> Thillens' charges thus broadly implicate the defendants' function of influencing the legislative process regarding a legitimate legislative issue. Establishing the defendants' role in the conspiracy naturally would require investigation into activities cloaked with immunity, including study of staff activities and motivations for acts of the defendants and their staffs geared toward enacting the challenged laws. Official immunity was designed to prevent a plaintiff from using a civil action to peer so deeply into the legislative process.

*Id.* at 1131. Because Thillens' claims depended upon proof of the motives behind legislative actions taken after bribes were accepted, immunity barred suit. The Seventh Circuit thus reversed the district court's conclusion that because a bribe was involved, legislative immunity could not apply. *Id.* at 1129. Chappell presses the same argument upon us, and we likewise reject it.

Chappell would have us follow instead the Eighth Circuit's decision in *Bieter Co. v. Blomquist*, 987 F.2d 1319 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 81, 126 L.Ed.2d 50 (1993). The *Bieter* court allowed a civil RICO suit by a shopping center against, inter alia, city councilmembers who had taken bribes and voted against the center's rezoning application. The court concluded that a jury might be able to find proximate cause based on the bribed councilmembers' influence over the rezoning vote. *Id.* at 1327. We find *Bieter* unpersuasive, however, because the opinion never addressed the question of legislative immunity. We agree instead with the reasoning of *Thillens* and the command of *Tenney*.

As a result, Robbins may not be subjected to civil RICO liability based on his alleged conduct unless Chappell can show that Robbins' legislative immunity was somehow abrogated. We consider that matter next.

### III

■ As a threshold issue, we must decide whether Congress even has the power to abrogate legislative common-law immunity. We agree that it can.

The Supreme Court's seminal legislative immunity case, *Tenney v. Brandhove,* expressly left open this question, although it cast doubt on whether such a power might exist. *See* 341 U.S. at 376, 71 S.Ct. at 788 ("Let us assume, merely for the moment, that Congress has constitutional power to limit the freedom of State legislators acting in their traditional sphere. That would be a big assumption...."). However, although the Supreme Court has returned to that question only in dicta, it has subsequently strongly implied that legislative immunity can be abrogated. *See Pulliam v. Allen,* 466 U.S. 522, 529, 104 S.Ct. 1970, 1974, 80 L.Ed.2d 565 (1984) ("Our cases have proceeded on the assumption that common-law principles of legislative and judicial immunity were incorporated into our judicial system and that they should not be abrogated absent clear legislative intent to do so.").

Pulliam holds that Congress may abrogate judicial immunity if it so chooses. *Id.* at 543, 104 S.Ct. at 1981. Given that judicial immunity's roots run just as deep as those of legislative immunity, *see Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d

288 (1967), we see no colorable basis for declining to apply this rule to legislative common-law immunity. Thus, although the district court questioned whether Congress could override legislative immunity, we hold that it can. *See In re Perry,* 882 F.2d 534, 543 (1st Cir.1989) ("[P]ersonal common-law immunities—which Congress can lawfully override if it chooses to do so—must bend to the congressional will.").

In determining whether a common-law immunity has been abrogated, we follow the Supreme Court's lead and apply a clear statement rule. For example, the Supreme Court in *Pierson* declined to find a statutory override because the legislative record gave no "clear indication" that Congress intended to abolish common-law immunity, presuming that "Congress would have specifically provided had it wished to abolish" the immunity defense. *Pierson,* 386 U.S. at 554, 555, 87 S.Ct. at 1217, 1218. In contrast, in *Pulliam,* the Court found judicial immunity to have been overridden by 42 U.S.C. § 1988 because the legislative reports expressly stated that § 1988 awards should be available even when immunities might otherwise apply. *Pulliam,* 466 U.S. at 543 & n. 23, 104 S.Ct. at 1981 & n. 23. Thus, while Congressional intent need not be unmistakably clear, there must be sufficient evidence in the statute or legislative history to show a specific "clear legislative intent" to waive immunity. *Id.* at 529, 104 S.Ct. at 1974; *see also Briscoe v. LaHue,* 460 U.S. 325, 336–41, 103 S.Ct. 1108, 1115–1118, 75 L.Ed.2d 96 (1983) (rejecting claim of abrogation based on general intent).

## IV

█ It remains for us to consider whether, in passing RICO, Congress expressed such a clear legislative intent. Having reviewed both the statute's text and the underlying legislative history, we conclude that Congress did not.

Chappell first points us to § 1961(1), which includes bribery in its definition of predicate acts. Chappell argues that because bribery is included as a predicate act, and is "a crime which is peculiar to public officials," *United States v. Angelilli,* 660 F.2d 23, 31 (2d Cir. 1981) (citation omitted), Congress must have meant to abrogate legislative immunity. We do not dispute either premise, but the conclusion simply does not follow. As the district court recognized, "[t]aking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act." *Brewster,* 408 U.S. at 526, 92 S.Ct. at 2544. Because bribery is not a legislative act, it is not protected by immunity. Because bribery is not protected by immunity, the inclusion of bribery as a predicate act in 18 U.S.C. § 1961(1) does not require an intent to abrogate immunity.[2]

Chappell also points us to numerous cases involving the criminal RICO conviction of state legislators under § 1962. *See United States v. Freeman,* 6 F.3d 586 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1661, 128 L.Ed.2d 378 (1994); *United States v. Dischner,* 974 F.2d 1502 (9th Cir.1992), *cert. denied,* 507 U.S. 923, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993); *United States v. Montoya,* 945 F.2d 1068 (9th Cir.1991); *United States v. Bagnariol,* 665 F.2d 877 (9th Cir. 1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). These cases reflect the fact that in passing RICO, Congress can and has criminalized some forms of political corruption. However, they do not help us decide what civil remedies Congress intended to make available. Unlike civil RICO, the criminal provisions of § 1962 contain no injury requirement. *Compare* 18 U.S.C. § 1962 *with* 18 U.S.C. § 1964(c). Consequently, engaging in a pattern of racketeering by collecting bribes can alone meet the requirements of criminal RICO; prosecutors need not further "draw in question the legislative acts of the defendant ... or his motives for performing them." *Brewster,*

---

**2.** This is certainly the case insofar as bribery might be the basis for criminal liability. When bribery was originally included in RICO, no civil damage liability provisions applied. *See* 116 Cong.Rec. S581–83 (Jan. 21, 1970) (reporting provisions of RICO as passed by the Senate). As we discussed in § II, *supra,* it is conceivable that civil suits under § 1964(c) based on bribery might implicate legislative immunity. Section 1964(c) was added many months later, and as we explain *infra,* nothing in the legislative history behind § 1964(c) indicates any expectation that that section would apply to legislators.

408 U.S. at 526, 92 S.Ct. at 2544 (quoting *Johnson*, 383 U.S. at 185, 86 S.Ct. at 757). For this reason as well, legislative immunity simply is not implicated by such prosecutions.

At oral argument, Chappell also suggested that because Congress had written no "legislator" exemption into the civil remedies created by § 1964, it must therefore have intended to abrogate immunity. *Cf. Pierson*, 386 U.S. at 563, 87 S.Ct. at 1222 (Douglas, J. dissenting) (arguing that Congress must have intended to abrogate judicial immunity when it passed the Civil Rights Act of 1871 because it failed to expressly exempt judges). We think, as did the *Pierson* majority, that this contention turns the proper inquiry on its head. We may fairly presume that Congress is aware of the common-law background against which it legislates, and that it does not intend to abolish all common-law immunities absent an express directive to retain them. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258, 101 S.Ct. 2748, 2755, 69 L.Ed.2d 616 (1981).

In short, we find nothing in the nature of RICO's statutory structure which evinces any clear congressional intent to abrogate legislative immunity.

We have carefully reviewed all the legislative history cited by both sides, and find nothing expressly discussing the immunity issue before us or clearly suggesting any resolution of the issues we must now decide.

When we are dealing with the abrogation of immunity, it is not enough that by its language a statute may not foreclose a particular application. We are required by *Pulliam* to find a clear indication that Congress affirmatively intended to abrogate immunity. Unlike in the statute at issue in *Pulliam*, here Congress has said nothing on the subject. While *Pulliam* does not establish an irreducible minimum for how explicit Congress must be in order for us to find an intent to abrogate, Congress must leave us more than tea leaves from which to discern intent. We can only conclude, upon a full consideration of the statute and legislative history, that Congress simply never considered the question. Nor can we say with any certainty what Congress might have preferred had it done so.

As a fallback, Chappell relies on RICO's express direction that "[t]he provisions of this title shall be liberally construed to effectuate its remedial purpose." Pub.L. No. 91–452, § 904(a), 84 Stat. 947; *accord Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985) ("RICO is to be read broadly" to effectuate remedial purpose). *Sedima* further admonishes: "While few of the legislative statements about novel remedies and attacking crime on all fronts ... were made with direct reference to § 1964(c), it is in this spirit that all of the Act's provisions should be read." According to Chappell, these interpretive rules require us to construe any ambiguity in his favor.

In this case, however, these guidelines do not help Chappell. There are no provisions to be read broadly. There is nothing to liberally construe. 18 U.S.C. § 1964(c) says nothing about abrogating legislative immunity, and neither does the history behind it. In determining whether Congress intended to abrogate legislative immunity, we must still find *some* evidence of intent. *See Pierson*, 386 U.S. at 554–55, 87 S.Ct. at 1217–18. The canon directing courts to liberally construe remedial legislation to effect a statute's purpose offers no authority for us to read into the statute or its legislative history evidence of a legislative intent that simply isn't there. As the Supreme Court has explained, § 904(a), the liberal construction clause,

> obviously seeks to ensure that Congress' intent is not frustrated by an overly narrow reading of the statute, but it is not an invitation to apply RICO to new purposes that Congress never intended. Nor does the clause help us determine what purposes Congress had in mind. Those must be gleaned from the statute through the normal means of interpretation.

*Reves v. Ernst & Young*, 507 U.S. 170, 182–84, 113 S.Ct. 1163, 1172, 122 L.Ed.2d 525 (1993). Nor, for that matter, do these principles offer authority for us to discern an abrogation of immunity based on less evi-

dence than the Supreme Court's precedents would require.

Chappell also seeks support for his position in a pair of civil RICO cases, *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) and *Bieter Co. v. Blomquist*, 987 F.2d 1319 (8th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 81, 126 L.Ed.2d 50 (1993). Each involved a civil RICO suit based on alleged bribery of public officials. Neither, however, addressed the issue of legislative immunity. In *H.J., Inc.*, the Supreme Court addressed only the question of how to define a "pattern" under 18 U.S.C. § 1962(c). Similarly, the *Bieter* court focused principally on whether plaintiffs could show their injuries were proximately caused by the defendants' bribery, and it was not faced with the question of legislative immunity. Obviously, no legislative immunity would apply to such defendants. Neither case addresses the issue now facing us.[3]

In contrast, the only two circuit decisions to consider the applicability of common-law immunity to RICO have found RICO claims barred. *See Glick v. Gutbrod*, 782 F.2d 754 (7th Cir.1986) (judicial immunity); *Thillens, Inc. v. Community Currency Exch. Ass'n of Illinois, Inc.*, 729 F.2d 1128 (7th Cir.) (legislative immunity), *cert. denied sub nom. Thillens, Inc. v. Wall*, 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 342 (1984). While neither reached the issue of abrogation, our review of the statute and history confirms that the same result should still be reached. In passing RICO, Congress did not evince a "clear legislative intent" to displace common-law immunities. Legislative immunity may therefore be raised as a defense to a civil RICO suit.

## V

We do not in any way condone the egregious violations of the public trust admitted to by Senator Robbins in his criminal plea agreements. However, unless Congress clearly says otherwise, Robbins is entitled to invoke the protections that legislative immunity affords him in a civil lawsuit under RICO. In the absence of further Congressional action, recourse for conduct such as Robbins' lies with the ballot box and in the hands of state and federal prosecutors. *See Tenney*, 341 U.S. at 378, 71 S.Ct. at 788 ("Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses.").

AFFIRMED.

---

**3.** It is true that *Bieter* allowed a civil RICO suit against city councilmembers based on legislative acts to go forward. We do not consider it even persuasive authority, however, because the issue of immunity was never raised. *See SEIU v.* *County of San Diego*, 35 F.3d 483, 489 (9th Cir.1994) (rejecting as authority prior cases which reached contrary result without addressing dispositive underlying issue).